Priebe, Administratrix, Appellant, vs. Hirsch and another, Respondents.

*November 18—December 9, 1913.*

*Master and servant: Injury: Working place made unsafe by employee: Unauthorized assembling and use of appliances.*

Where two employees, without the knowledge or consent of the employer and without any necessity therefor so far as the duties of either are concerned, of their own motion proceed to assemble and use an appliance which proves to be dangerous and inflicts an injury upon one of them, the employer is not liable for such injury on the ground that he has not performed his duty of furnishing a safe working place.

Appeal from a judgment of the circuit court for Milwaukee county: J. C. Ludwig, Circuit Judge. *Affirmed.*

This action was brought by the plaintiff, as administratrix, to recover damages for injuries to, and death of, her son, William Priebe. The facts out of which this cause of action arose are practically undisputed and are, briefly stated, as follows: The defendants, copartners, own and operate a foundry in the city of Milwaukee and are in the agricultural implement business. On May 2, 1912, the deceased, a

young man about twenty years of age, was one of their employees, and had charge of a steam engine in the foundry, did shop work, and looked after the cleaning and delivery of castings. In defendants' foundry there was a machine known as an emery stand, used for cleaning and grinding castings. The machine was operated by belt power, and need be described with nó further details than that it consisted of an arbor with a rapidly revolving emery wheel at one end thereof for grinding castings, and a wire brush at the other for cleaning and polishing them. On the day in question the deceased had on hand a large quantity of plowshares to grind. William Hintz, a cousin of deceased, a young boy about eighteen years old, was also in the employ of defendants, and his duties were to assist in the shipping of agricultural implements, and he also, as he expressed it, acted as handy man to any one that needed assistance. Between 9 and 9:30 o'clock in the forenoon of said day Hintz was sent by one George Brenner, the shipping clerk, to inquire of deceased "whether or not that lot of plowpoints or plowshares had been completed." He did so, received a negative answer to this inquiry from deceased, and reported it to Brenner, who made no comment thereon and said nothing further to Hintz on the subject. However, before Hintz returned to Brenner he spoke to deceased and said that he would "lend him a hand or help him on that job around 1 o'clock." He thereupon, about 10 o'clock, proceeded to the warehouse in the three-story building of the defendants adjoining the foundry, walked up to the second story thereof and into the store room or stock room, where, on one side of such room, there was a pile of old, and on the other side a pile of new, emery stones, took an old one lying near the pile of new ones, brought it down to the foundry, and placed it on a shelf about ten feet from the emery wheel stand at which deceased was working. At about 1 o'clock he returned to the foundry, took the stone that he had previously laid

upon the shelf, held it while deceased removed the wire brush that was on one end of the arbor, and substituted the stone in place of it, the fitting and adjustment being done by deceased. The substitution of this emery stone for the wire brush being accomplished, they both proceeded to grind the plowshares. This work they did for about ten minutes, when the newly-added emery stone at which deceased was engaged broke, the flying parts thereof striking his body and fatally injuring him.

At the close of the evidence, on motion therefor the court directed the jury to find a verdict for the defendants, on the ground, as stated in his written opinion, in substance, that deceased was guilty of contributory negligence in that he disobeyed the orders or instructions of the defendants that whenever a change was to be made about the emery wheel stand he should apply to one of the defendants or the foreman. From a judgment entered on such directed verdict the plaintiff appealed.

For the appellant there was a brief by *Rubin & Zabel,* attorneys, and *Horace. B. Walmsley,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Walmsley.*

For the respondents there was a brief by *Harper & Mc-Mynn,* attorneys, and *Edgar L. Wood,* of counsel, and oral argument by *R. N. McMynn.*

VINJE, J. It seems the trial court held the plaintiff could not recover because the deceased was guilty of contributory negligence by violating the shop rule against making any change in any appliance or machine without the consent of Mr. Hirsch, one of his employers, or Mr. Jordan, the foreman. In the view the court takes of the case it is not necessary to pass upon the correctness of such ruling. The evidence shows that the deceased had provided for him by his employer an emery wheel and brush safe and adequate for his work; that the employer did not contemplate or authorize

the use of an additional one; that an additional one became necessary only by reason of Hintz volunteering to help the deceased. The employers did not know of such help being rendered and had no knowledge that another emery wheel was assembled and used. Neither does the evidence show that it was necessary that the deceased should be assisted in his work. We have, therefore, a situation where two employees, without the knowledge or consent of the employer, and without any necessity therefor so far as the duties of either are concerned, of their own motion proceed to assemble and use an appliance which proves to be dangerous and results in inflicting an injury upon one of them. Under such circumstances, is the employer liable on the ground that he has not performed his statutory duty of furnishing his employees with a safe place of employment? We think not. The danger was not created by the master, either directly or indirectly, for the employees were not acting within the scope of their employment when assembling and using the appliance. There was nothing in the duties of either that required or contemplated that such action should be taken on their part. Nor could the employer reasonably anticipate such action. The law wisely imposes upon the employer the duty to furnish a safe place of employment, but it does not hold him responsible for the unauthorized acts of employees who fail to furnish themselves a safe place when their duties do not require them to furnish it at all. Had the deceased remained at the place selected for him by his employer he would have been unharmed. He was injured because he and Hintz, who volunteered to help him, made a new place of employment and failed to make it safe, whether negligently or not is immaterial. Such new place having been made by the employees without the knowledge or consent of the employer, and without any necessity therefor arising out of the duties imposed upon them, he cannot be held liable for the unsafe condition thus created by them.

*Goff v. C. R. & M. R. Co.* 86 Wis. 237, 56 N. W. 465; *Charron v. Northwestern F. Co.* 149 Wis. 240, 134 N. W. 1048. The duty of the employer of furnishing a safe place does not extend to places needlessly chosen by employees without his knowledge, but is limited to places which it is his duty either directly or by necessary implication to furnish.

An employer's duty to furnish a safe place of employment is met when he furnishes a place which is safe provided the employment is carried on as the employer directs, or as an ordinarily prudent person may reasonably anticipate it may be carried on by the employee. He is not bound to furnish a place that shall be safe in any event, no matter how the employee does his work. *Montevilla v. Northern F. Co.* 153 Wis. 292, 141 N. W. 279.

*By the Court.*—Judgment affirmed.